UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
---------------------------------X
FRANK PERRELLI,                  :

    Plaintiff,              :

       - against -           :   No. 3:02CV0008(GLG)
                              **MEMORANDUM DECISION**
CITY OF EAST HAVEN,              :
LEONARD GALLO,
JOHN DOE ONE, and                :
JOHN DOE TWO,
                               :
    Defendants.
---------------------------------X

FILED
JUN 1  2 32 PM '04
U S DISTRICT COURT
NEW HAVEN, CONN.

    Pending before the Court is Defendants' Motion for Summary Judgment **[Doc. # 22]** addressed to all claims in Plaintiff's complaint. For the reasons discussed below, Defendants' motion will be granted.

### Summary Judgment Standard

    The standard for granting a motion for summary judgment is well-established. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine factual dispute rests with the moving party. See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). In ruling on a summary judgment motion, the Court cannot resolve issues of fact. Rather, it is

empowered to determine only whether there are material issues in dispute to be decided by the trier of fact. The substantive law governing the case identifies those facts that are material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In assessing the record to determine whether a genuine dispute as to a material fact exists, the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. <u>Id.</u> at 255; <u>Matsushita Electric Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

However, as the Supreme Court stated in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986), "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." <u>Id.</u> at 323.

Additionally, when a motion is made and supported as provided in Fed. R. Civ. P. 56, the non-moving party may not rest upon mere allegations or denials of the moving party's pleadings, but instead must set forth specific facts showing that there is a

genuine issue for trial. Fed. R. Civ. P. 56(e). In other words, the non-moving party must offer such proof as would allow a reasonable jury to return a verdict in his favor. Anderson v. Liberty Lobby, 477 U.S. at 256.

## Plaintiff's Claims

Plaintiff, Frank Perrelli, has sued the City of East Haven, its police chief Leonard Gallo, and two John Doe defendants, who are unnamed East Haven police officers, pursuant to 42 U.S.C. §§ 1983 and 1988, for alleged violation of his constitutional rights under the Fourth and Fourteenth Amendments. Plaintiff, who suffers from mental illness, alleges that during the summer of 2001, he was repeatedly stopped by members of the East Haven Police Department who searched his person and automobile. (Compl. ¶ 14.) These seizures, he alleges, were without a warrant and without probable cause to believe that Plaintiff had committed any crimes. (Id.) Plaintiff alleges on information and belief that he was targeted for aggressive surveillance because Defendants had received reports of his arrests in other communities. (Compl. ¶ 15.) He further charges the City and Police Chief Gallo with having a policy or practice of "aggressively surveilling [sic], searching and taking into custody people whom the police believe are mentally ill, but not so symptomatic as to justify taking them into custody due as [sic] dangers to themselves and/or others." (Compl. ¶ 16.)

3

Plaintiff alleges that the individual Defendants were acting under color of state law and pursuant to police department policy. He claims that they acted intentionally and maliciously, as a direct result of which he suffered loss of liberty, exacerbation of his mental illness, and a violation of his right to be free from unreasonable searches and seizures. (Compl. ¶ 18.)

## Undisputed Facts

The following facts, taken from Defendants' Local Rule 56(a)(1) Statement, have been admitted by Plaintiff, except as specifically noted.

Plaintiff was diagnosed with a psychiatric disability when he was 21 years old, the nature of which he cannot define, and which is ongoing. (Defs.' St. ¶ 1.) He has received SSI disability because of his psychiatric condition for approximately 20 years. (Defs.' St. ¶ 2.) Prior to August 7, 2003, he had been hospitalized approximately 15 times as a result of his psychiatric condition. (Defs.' St. ¶ 3.) None of these hospitalizations were the result of his being detained by an East Haven police officer pursuant to Conn. Gen. Stat. § 17a-503. (Defs.' St. ¶ 4.)

On August 15, 2001, Plaintiff was stopped by two East Haven police officers allegedly for failing to stop at a stop sign. The officers searched the trunk of his car without his consent

and found Plaintiff's prescription medicine in unmarked bottles. They also found a stun gun in his car. Plaintiff was then arrested by the East Haven police for possessing a weapon in a motor vehicle in violation of Conn. Gen. Stat. § 29-38 and for the illegal storage of narcotics in violation of Conn. Gen. Stat. § 21a-257. (Defs.' St. ¶ 5.) At the time Plaintiff was stopped by the East Haven police in August 2001, he admits to having a stun gun in his vehicle and that he did not have a permit for the gun. (Defs.' St. ¶ 6; Pl.'s Dep. at 108, 157.) (By way of explanation, Plaintiff states that, when he purchased the gun, no one informed him that he needed a permit.) (Pl.'s Resp. to Defs.' St. ¶ 6.) Plaintiff does not remember where the stun gun was located in his vehicle in August 2001. (Defs.' St. ¶ 7.) He also admits that he had prescription medicine in his car at the time he was stopped. He states that he had taken the prescription medications out of their original containers and placed them in clear vials, which were in a CVS bag in his vehicle. (Defs.' St. ¶ 8; Pl.'s Dep. at 154-56.) By way of explanation, he states that he "was going to take them, if [he] was out of town or somewhere where [he] needed them. But the bags - they were in the bags from the pharmacy. . . . a CVS bag." (Pl.'s Dep. at 155.)

Plaintiff also admitted in his deposition that prior to the East Haven police stopping him on August 15, 2001, he may have

failed to stop at the traffic signal prior to turning onto the road leading to his house. (Defs.' St. ¶ 9; Pl.'s Dep. at 160.)[1]

Due to his psychiatric condition, which causes him to have memory problems, Plaintiff cannot remember all that occurred during his August 2001 arrest by the East Haven police, including the sequence of events. (Defs.' St. ¶¶ 10, 11.)

Plaintiff claims that prior to August 2001, he was pulled over by the East Haven police on three or four occasions, but he does not remember the specific details of the stops. (Defs.' St. ¶¶ 12, 13.) He assumes that the stops prior to August 2001 were because he was driving a new car. (Defs.' St. ¶ 14.)

He does not know of anyone besides himself who has been subjected to discrimination by the East Haven police based on a psychiatric disability. (Defs.' St. ¶ 15.)

Plaintiff does not know the identity of John Doe I or John Doe II, nor can he describe their physical appearances. (Defs.' St. ¶ 16.)

Plaintiff does not have any evidence that the East Haven police were alerted by other police communities of his mental condition. (Defs.' St. ¶ 17.)

---

[1] Although Plaintiff disagreed with this statement in his Response to Defendants' Rule 56(a)1 Statement, it appears from his response that he was disagreeing with Defendants' Statement ¶ 8, instead. Citing his deposition at 155-56, he states, "Disagree. He had the prescription information in the automobile with him." This response has nothing to do with Defendants' Statement ¶ 9.

**Discussion**

## I. The Claims Against the John Doe Defendants

Courts generally allow complaints against "John Doe" defendants to stand while a plaintiff attempts to learn their real names through discovery. But, if after the completion of discovery, the plaintiff is not able to identify the actual names of the John Doe defendants, the claims against them must be dismissed. <u>Valentin v. Dinkins</u>, 121 F.3d 72, 75 (2d Cir. 1997).

Despite numerous extensions of the discovery period, and Plaintiff is not able to identify either "John Doe 1" or "John Doe 2." Plaintiff states that the reason he has not been able to identify these defendants by name is that certain incident reports were not produced by the East Haven Police Department.[2] Yet, there are no requests for production or motions to compel outstanding.

Additionally, Plaintiff states that the Court in <u>Valentin</u> cautioned against dismissal as a sanction. However, in <u>Valentin</u>, the plaintiff was incarcerated and was proceeding <u>pro se</u> and discovery had not closed. Here, this case has been pending for over two years and discovery has closed. Plaintiff is

---

[2] As Defendants point out, nowhere in the record is there any authorization from Plaintiff allowing the Police Department to release his erased records to anyone. The Department states that, pursuant to Conn. Gen. Stat. §§ 54-142a(e) and 54-142k, where a nolle has expired and it has not received authorization from the arrestee to release his records, they are entitled to refuse to do so.

7

represented by counsel. Because Plaintiff has not identified the "John Doe" defendants by name, his claims against them are dismissed.

## II. The Monell Claims Against the City and Police Chief Gallo

The only remaining claim is what appears to be a Monell[3] claim against the City and Police Chief based on an alleged policy, practice and custom of "aggressively surveilling, searching and taking into custody people whom the police believe are mentally ill, but not so symptomatic as to justify taking them into custody due to dangers to themselves and/or others." (Compl. ¶ 16.)

In the recent case of Amnesty America v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004), cited by both sides, the Second Circuit discussed at length the proof required by a plaintiff alleging a claim of municipal liability under Monell.

> Demonstrating that the municipality itself caused or is implicated in the constitutional violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees.
> . . . .
> Monell established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal

---

[3] See Monell v. New York City Department of Social Services, 436 U.S. 658, 690 (1978)(holding that "[l]ocal governing bodies . . . can be sued directly under [42 U.S.C.] § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.")

> connection between the municipality and the
> constitutional deprivation, because an employee's act
> of enforcing an unconstitutional municipal policy may
> be considered the act of the municipality itself. . . .
> Conversely, constitutional torts committed by city
> employees without official sanction or authority do not
> typically implicate the municipality in the deprivation
> of constitutional rights, and therefore the
> employer-employee relationship is in itself
> insufficient to establish the necessary causation.
> . . . .
> [W]hen a subordinate municipal official is alleged to
> have committed the constitutional violation, municipal
> liability turns on the plaintiffs' ability to attribute
> the subordinates' conduct to the actions or omissions
> of higher ranking officials with policymaking
> authority. One means of doing so, of course, is to
> establish that a policymaker ordered or ratified the
> subordinates' actions. . . . Another method of
> implicating a policymaking official through
> subordinates' conduct is to show that the policymaker
> was aware of a subordinate's unconstitutional actions,
> and consciously chose to ignore them, effectively
> ratifying the actions. . . .

361 F.3d at 124-26 (internal citations omitted).

The only evidence in the record to support this claim is Plaintiff's own testimony that, in addition to the August 15, 2001 incident, he was stopped on three other occasions by the East Haven police without probable cause. He does not remember why he was pulled over on any of these occasions, except for "having a new car" and because he was being harassed. (Pl.'s Dep. 80-81.) He also testified that he believes that the East Haven Police take advantage of people with disabilities. This opinion, he testified, was based on his own beliefs and what he had been told by a woman who works at the court. She allegedly told him that the East Haven police take advantage of people with

disabilities. (Pl.'s Dep. at 74-75.)  His testimony as to what she told him is hearsay and cannot be considered by the Court. No statement or testimony of this court employee has been produced by Plaintiff.

Plaintiff also bases his claim on testimony of Chief Gallo that the police officers do not receive any special training concerning the handling and treatment of individuals with mental disabilities.  (Gallo Dep. at 26-27, 60-61.)  Chief Gallo's testimony does not give rise to municipal liability under Monell for several reasons.  First, Plaintiff's Monell claim is not based on the Department's lack of training of its officers. Rather, it is premised on an alleged policy of the Department to conduct aggressive surveillance of persons with mental disabilities, to conduct searches of such persons without probable cause, and to take them into custody even though they are not a danger to themselves or others.  See Conn. Gen. Stat. § 17a-503.[4]  Second, Plaintiff misreads Chief Gallo's testimony. When asked what training is offered to East Haven police officers

---

[4] Section 17a-503, Conn. Gen. Stat., entitled "Detention by police officer prior to commitment issuance of emergency certificate by psychologist, when," provides in part

> (a) Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself, herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination. . . .

10

"currently, or within the past year . . . on identifying persons who are at imminent risk to themselves or others," Chief Gallo responded, "I am not familiar with all the courses, but they are offered by the municipal academy." (Gallo Dep. at 26.) In response to numerous follow-up questions, the Chief reiterated that he was not familiar with the course work, the curriculum, or classes offered by the academy. (Gallo Dep. at 26-27, 36-38, 61.) A fair reading of his testimony indicates that he was not testifying that there was no training within the Department. Rather, he testified that he did not know what specific training the officers received at the training academy. Third, although a municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training, City of Canton v. Harris, 489 U.S. 378, 387-90 (1989), Plaintiff has failed to offer any evidence as to the purported inadequacies in the City's training program and the causal relationship between those inadequacies and the alleged constitutional violations. See Amnesty America, 361 F.3d at 129.

Plaintiff conceded that he did not know of anyone whom he believed had been the subject of discrimination by East Haven Police Officers based on disability. (Pl.'s Dep. at 117.) No other evidence has been presented by Plaintiff in support of his

11

Monell claim. Thus, the only evidence is Plaintiff's vague testimony that he had been stopped by the East Haven police on three prior occasions although he cannot recall the details of any of these incidents. He thinks it may have been because he had a new car or for purposes of harassment. This evidence, standing alone, is insufficient to establish a policy, practice or custom in the East Haven Police Department of unlawfully taking into custody, searching without probable cause, or conducting excessive surveillance of persons with mental disabilities, who are not a danger to themselves or others. There is no evidence that Chief Gallo was aware of any unconstitutional activity on the part of the officers or that he acquiesced in it in any way.

Therefore, because Plaintiff has failed to raise a genuine issue of material fact in support of his Monell claim, we grant summary judgment in favor of Defendants.

### Conclusion

Defendants' Motion for Summary Judgment **[Doc. # 22]** is GRANTED as to all claims of Plaintiff's Complaint. The Clerk is directed to enter Judgment accordingly and to close this file.

SO ORDERED.

Date: May 28, 2004.
Waterbury, Connecticut.

GERARD L. GOETTEL,
United States District Judge